# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK BANKS, | ) | |
| | ) | Civil Action No. 13-781 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | District Judge Nora Barry Fischer |
| OFFICER MACHESKY, *et al.*, | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| | ) | ECF No. 29 |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss (ECF No. 29) filed by Defendants Officer Dave Machesney[1] ("Officer Machesney"), Police Chief Robert McNeilly ("Chief McNeilly"), and the Township of Elizabeth ("Elizabeth Township") (collectively "Defendants") be granted.

**II.  REPORT**

**A.  Factual Background**

The claims in this action stem from an interaction between Plaintiff Frederick Banks ("Plaintiff" or "Banks"), a resident of Allegheny County, Pennsylvania, and Officer Machesney, a police officer employed by Elizabeth Township. (Compl. ¶¶2-3). Prior to the incident at issue, Plaintiff had apparently sent text messages to his former fiancé requesting instructions as to how to return some of her possessions to her. (Id. at ¶ 5). According to the complaint, Officer

---

[1] In his Complaint, Plaintiff incorrectly refers to Officer Machesney as "Officer Machesky", Chief McNeilly as "Chief McHeeney", and the Elizabeth Township as the "Elizabeth Township Police Department." (ECF No. 2).

Machesney telephoned Plaintiff on June 5, 2013, and threatened Plaintiff with harassment charges if Plaintiff continued to contact his former fiancé. (Id. at ¶¶ 2, 4). When Plaintiff requested a copy of the pertinent police report, Officer Machesney refused to provide one, insisting that Plaintiff would have to travel to Elizabeth Township if he wanted to see it. (Id. at ¶ 5). Plaintiff asked whether he could receive a copy if he contacted his state representative or United States Congressman, to which Officer Machesney replied, "That's what you'd better do." (Id.). Officer Machesney also refused Plaintiff's request to speak with Chief McNeilly or his assistant, causing Plaintiff to question whether Officer Machesney was acting outside of his authority. (Id. at ¶ 6).

On June 13, 2013, after receiving leave to proceed *in forma pauperis*, Plaintiff filed the instant complaint pursuant to 42 U.S.C. § 1983 against Officer Machesney, Chief McNeilly, Elizabeth Township, United States Congressman Mike Doyle ("Congressman Doyle"), the Commonwealth of Pennsylvania, the Pittsburgh Post-Gazette, the Pittsburgh Tribune-Review, the Pittsburgh City Paper, the Chicago Tribune and the New York Times. (ECF No. 1, 2). In his complaint, Plaintiff alleged that Officer Machesney's threat of prosecution violated his civil rights as secured by the First, Fifth, and Ninth Amendments to the United States Constitution. (Compl. at ¶ 9).

On June 13, 2013, the undersigned issued a Report and Recommendation recommending dismissal of all claims against Congressman Doyle, the Commonwealth of Pennsylvania, the Pittsburgh Post-Gazette, the Pittsburgh Tribune-Review, the Pittsburgh City Paper, and the Chicago Tribune pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). (ECF No. 3). The undersigned also recommended that Plaintiff be permitted an opportunity to attempt to cure the factual deficiencies identified in the Report and Recommendation by filing an amended complaint.

(Id.).  On July 5, 2013, United States District Judge Nora Barry Fischer adopted the Report and Recommendation.  (ECF No. 4).  When Plaintiff failed to amend his complaint before the prescribed deadline, Judge Fischer dismissed the claims against each of the aforementioned Defendants with prejudice.  (ECF No. 14).

On September 19, 2013, the undersigned issued a second Report and Recommendation recommending that the New York Times be dismissed from this action pursuant to 28 U.S.C. §1915(e)(2)(B)(i)-(ii).  (ECF No. 15).  The undersigned again recommended that Plaintiff be provided an opportunity to file an amended complaint, and Plaintiff again failed to do so.  (ECF No. 17).  Judge Fischer adopted the Report and Recommendation on October 17, 2013 (ECF No. 16), and dismissed the New York Times from this action with prejudice on November 6, 2013. (ECF No. 17).

The remaining Defendants filed the instant Motion to Dismiss on May 29, 2014.  (ECF No. 29).  Despite several extensions of the applicable deadlines, Plaintiff has not responded to the Defendants' Motion to Dismiss.  This matter is now ripe for review.

### B. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57) (internal citation omitted).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the Fowler court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's

4

> entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. *This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.*

Fowler, 578 F.3d at 210-11 (emphasis added).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir. 1999)). See also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. See, e.g., Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### C. Discussion

42 U.S.C. § 1983 provides private citizens with a means to redress violations of federal law committed by state actors. In pertinent part, Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Id. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a Section 1983 claim, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the instant case, Plaintiff claims that Officer Machesney violated his constitutional rights when he threatened to file harassment charges against Plaintiff based on Plaintiff's text messages to his former fiancé. Specifically, Plaintiff maintains that Officer Machesney violated his "Due Process and Constitutional Right to Privacy under the Fifth and First Amendment[] to the United States Constitution" and deprived him of his "right to have contact with his former fiancé to return her items to her under the Ninth Amendment." (Id. at ¶¶ 7, 9). Each of these allegations will be addressed in turn.

### 1. Fifth Amendment Claim

As noted above, Plaintiff alleges that Officer Machesney's actions violated his due process rights as secured by the Fifth Amendment. However, it is axiomatic that "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action . . ." Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983). There is no dispute that none of the

remaining Defendants in this action is a federal actor. Consequently, Plaintiff cannot maintain a Fifth Amendment claim pursuant to § 1983. See, e.g., Leventry v. Watts, 2007 WL 1469038, at *2 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors."); Kopchinski v. Green, 2006 WL 2228864, at *1 (E.D. Pa. Aug. 2, 2006) (dismissing plaintiff's Fifth Amendment claims because all of the defendants were state actors).

### 2. Ninth Amendment Claim

It is well-established that the Ninth Amendment is "a rule of construction" rather than a "guarantee of a right or a proscription of an infringement." Nicolette v. Caruso, 315 F.Supp.2d 710, 718 (W.D. Pa. 2003). As such, "section 1983 civil rights claims premised on the Ninth Amendment must fail because there are no constitutional rights secured by that amendment." Id. See also Perry v. Lackawanna County Children & Youth Servs., 345 F. App'x 723, 726 (3d Cir. 2009) ("[T]he Ninth Amendment does not independently provide a source of individual constitutional rights."); Soder v. Chenot, 2007 WL 4556670, at *4 (M.D. Pa. Dec. 20, 2007) ("The Ninth Amendment is a rule of construction . . . and by itself does not confer substantive rights for purposes of § 1983). This principle is fatal to Plaintiff's Ninth Amendment claim.

### 3. First Amendment Claim and Qualified Immunity

Defendants argue that Officer Machesney is protected by qualified immunity because no "reasonable person in the officer's position would be on notice" that he was violating Plaintiff's constitutional rights. (ECF No. 30 at 11.)
State officials performing discretionary acts enjoy "qualified immunity" from money damages in § 1983 causes of action when their conduct does not violate "clearly established" statutory or

7

constitutional rights of which a "reasonable person" would have known at the time the incident occurred. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The United States Court of Appeals for the Third Circuit has emphasized that "courts are sensitive to '[t]he broad range of reasonable professional judgment accorded' law enforcement officials in the § 1983 context." Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000) (quoting Greene v. Reeves, 80 F.3d 1101, 1107 (6th Cir. 1996)). The court of appeals has highlighted the United States Supreme Court's statement that "the qualified immunity doctrine 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) (quoting Malley v. Briggs, 475 U.S. 335, 345 (1986)).

The first inquiry under a qualified immunity analysis is whether the plaintiff has established a violation of a "clearly established constitutional right" as follows:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

The second inquiry concerns the reasonableness of the defendant's actions. The test for qualified immunity is based on objective reasonableness, that is, "whether a reasonable officer could have believed [the challenged action] to be lawful, in light of clearly established law and the information the [ ] officers possessed." Giuffre v. Bissell, 31 F.3d 1241, 1255 (3d Cir. 1994) (quoting Anderson, 483 U.S. at 641). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officers in the defendants'

position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful." Giuffre, 31 F.3d at 1255 (internal quotation omitted). It is the defendant's burden to establish that they are entitled to qualified immunity. See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989).

In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court clarified the two-step qualified immunity inquiry. The Court directed that, in deciding whether a defendant is protected by qualified immunity, a court first must determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. If the facts do not establish the violation of a constitutional right, no further inquiry concerning qualified immunity is necessary. Id. If the plaintiff's factual allegations do show a violation of his rights, then the court must proceed to determine whether the right was "clearly established," that is, whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer *in the defendant's circumstances* aware that what he was doing violated the right. *Id*. at 201-02 (emphasis added). Finally, in Pearson v. Callahan, 555 U.S. 223 (2009), the United States Supreme Court concluded that while the two-step sequence identified in Saucier "is often appropriate, it should no longer be regarded as mandatory." Id. at 236.

Here, affording the pro se Plaintiff a very broad reading of the Amended Complaint, he appears to allege a violation of his First Amendment rights. The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). Although Plaintiff references the First Amendment in his complaint, he does not identify any specific First Amendment violation that he believes occurred. Construing his allegations liberally, the most

9

promising theory of potential relief would be that Plaintiff engaged in protected activity by sending several text messages to his ex-fiancé and that Officer Machesney, a state actor, threatened him with the possibility of criminal prosecution in order to dissuade him from this exercise of his First Amendment rights.

In order to state a claim for First Amendment retaliation, Plaintiff must allege: "(1) that plaintiff engaged in conduct or speech protected by the First Amendment; (2) that the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that the protected activity caused the retaliation." Stone v. Felsman, 2011 WL 5320738, at *6 (M.D. Pa. Nov. 1, 2011) (citing Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)).

In the context of this case, the qualified immunity analysis is focused upon the question of whether "a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law *and the information in the officer's possession."* Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997) (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam); Anderson v. Creighton, 483 U.S. 635, 641 (1987)), quoted in, Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000). That is, taking all of Plaintiff's averments as true and affording them the most liberal construction possible, would an officer "reasonably believe that his conduct was lawful in light of the information he possessed at the time?" Berg, 219 F.3d at 272.

Here, on June 5, 2013, Officer Machesney called Plaintiff in response to a complaint filed with the Elizabeth Township Police Department. (ECF No. 2 at ¶¶ 1, 2, 5.) In his role as an Elizabeth Township police officer, Officer Machesney told the Plaintiff that if he "contacted his former [fiancé] that harassment charges would be filed against him." (ECF No. 2 at ¶ 4.) A

most liberal reading of the Complaint does not suggest that the Plaintiff and Officer Machesney had previous dealings such that Officer Machesney would have a reason, other than the fulfillment of his official duties as an Elizabeth Township police officer, to retaliate against the Plaintiff for exercising his First Amendment rights in texting his former fiancé, or in contacting her in the future. Instead, Officer Machesney was simply doing his job in response to a complaint lodged with the Elizabeth Township police department. *See* ECF No. 2 at ¶ 5. Hence, an officer presented with these circumstances would "reasonably believe that his conduct was lawful in light of the information he possessed at the time." Berg, 219 F.3d at 272. The Plaintiff avers no facts to suggest that Officer Machesney knew or should have known that the complaint lodged with the Elizabeth Township Police Department was bogus or unfounded such that a reasonable officer would have known that he was violating Plaintiff's First Amendment rights when he contacted Plaintiff in response to the complaint. Therefore, Officer Machesney is protected by qualified immunity and Plaintiff's First Amendment claim should be dismissed with prejudice.

Finally, Plaintiff's complaint is utterly bereft of any factual allegations directed towards Chief McNeilly and Elizabeth Township. The only reference to Chief McNeilly in the complaint occurs in the context of Officer Machesney's refusal to allow Plaintiff to speak with Chief McNeilly. Plaintiff has also failed to allege any facts concerning any pertinent actions or policies attributable to Elizabeth Township (or the Elizabeth Township Police Department). As such, dismissal is appropriate as to each of these Defendants. *See* Twombly, 550 U.S. at 556 (noting that a complaint must be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face.").[2]

---

[2] Plaintiff's complaint also references a request for a writ of mandamus. The writ of mandamus is "an ancient form of common law judicial relief" that "is seldom issued" and applies only to "an officer or employee of the United

11

### 4. Futility of Amendment

It is well-settled that a court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). In the instant case, the undersigned concludes that amendment would be clearly futile.[3] Plaintiff's Fifth and Ninth Amendment claims are not cognizable against the remaining Defendants under § 1983 as a matter of law, and no plausible facts exist which might overcome qualified immunity with respect to his First Amendment claim.

## III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 29) be granted. It is further recommended that amendment would be clearly futile.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the

---

States or any agency thereof." Banks v. Duquesne Light Co., 2013 WL 60700544, at *4 (W.D. Pa. Nov. 14, 2013) (citing 28 U.S.C. § 1361). Because there are no factual allegations in support of Plaintiff's mandamus request, and because none of the remaining Defendants is an officer or employee of the United States government or any agency thereof, mandamus relief is inappropriate.

[3] In addition to futility, two prior Report and Recommendations adopted by the Court recommended that Plaintiff be given an opportunity to amend his complaint. No amended complaints were ever filed.

date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: January 12, 2015

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Frederick Banks
P.O. Box 295
Pittsburgh, PA 15230

Counsel of Record
*Via ECF Electronic Mail*